# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRANCE CURTIS TRIPLETT,

        Petitioner,

   v.

UNITED STATES OF AMERICA,

        Respondent.

Civil Action No. 11-949

(Criminal No. 10-30)

ELECTRONICALLY FILED

## MEMORANDUM AND ORDER OF COURT DENYING
## DEFENDANT'S MOTION FOR HABEAS CORPUS RELIEF
## UNDER 28 U.S.C. § 2255  (DOC. NO. 58)

In this criminal action, Petitioner, Terrance Curtis Triplett, who previously pled guilty to two counts of a four-count indictment and was sentenced to a term of 188 months of imprisonment, has filed a *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255, primarily alleging ineffective assistance of counsel (grounds 1, 2, and 5) and claiming that as a result, this Court imposed an unreasonable sentence (ground 4). Doc. no. 58. More specifically, with respect to the ineffective assistance of counsel, Petitioner contends that his counsel was ineffective when he: (1) failed to file a direct appeal of the sentence as requested by Petitioner; (2) erroneously advised Petitioner to plead guilty to two counts of a four-count indictment so that he would not be deemed a career offender; and (3) failed to appeal this Court's denial of Petitioner's Motion to Suppress.

In addition, Petitioner's § 2255 Motion also alleges that this Court erred in its decision to partially deny Petitioner's Motion to Suppress Evidence (ground 3), and claims that as a result, this Court imposed an unreasonable sentence (ground 4). Petitioner's Motion to Suppress relates to evidence which was seized from Petitioner's home and his three motor vehicles pursuant to a search warrant issued solely for Petitioner's residence.

Finally, Petitioner alleges that his agreement to waive appeal from his sentence is invalid (ground 6). This agreement was documented in Petitioner's plea agreement with the United States. For the following reasons, the Petition shall be denied and no certificate of appealability shall issue.

## I.      Factual and Procedural Background

On February 16, 2010, Petitioner was charged in a four-count Indictment with various violations of federal law including: at Count One, possession with intent to distribute oxycodone; at Count Two, possession with intent to distribute less than five hundred grams of a mixture and substance containing a detectable amount of cocaine; at Count Three, possession of a firearm by a convicted felon; and at Count Four, possession of a firearm in furtherance of a drug trafficking crime. Doc. no. 15.

On April 28, 2010 Petitioner filed a Motion to Suppress Physical Evidence. Doc. no. 23. In his Motion, Petitioner alleged that all four charges against him were based on evidence seized pursuant to a search warrant issued to the Pennsylvania State Police for Petitioner's residence, which was an apartment. In his Motion to Suppress, Petitioner alleged that the affidavit in support of the search warrant failed to provide the requisite probable cause for the issuance of the warrant, and claimed the evidence seized came from his three vehicles, not just his apartment.

On June 8, 2010, upon review of the evidence presented by Petitioner, and after careful consideration of Petitioner's and the Government's respective positions, this Court granted in part and denied in part Petitioner's Motion to Suppress. Doc. no. 27. Specifically, this Court held that the affidavit provided a substantial basis for the issuance of the search warrant for Petitioner's residence, but not his vehicles. Accordingly, the Court granted Petitioner's Motion

to Suppress all physical evidence found in his vehicles, but denied the Motion to Suppress all physical evidence obtained from Petitioner's residence.

On September 1, 2010 the Government filed, "Information Charging Prior Offense Pursuant to Title 21, United States Code, Section 851." See doc. no. 37. This document outlined prior offenses committed by Petitioner specifically one on February 24, 2003 where Petitioner had been convicted in the Court of Common Pleas of Allegheny County for delivery of a controlled substance and was sentenced to "11 ½ months to 23 months imprisonment followed by 4 years probation." Id.

On September 1, 2010, Petitioner entered into a signed plea agreement with the United States, and pled guilty to Counts Two and Three of the Indictment – possession with intent to distribute less than five hundred grams of a mixture and substance containing a detectable amount of cocaine, and possession of a firearm by a convicted felon, respectively. Doc. nos. 39 and 40. This prior offense outlined in the Government's submission was discussed in open court by the Government and this Court during the plea hearing also held September 1, 2010, as was the specific impact the prior conviction would have on Petitioner's maximum sentence. See doc. no. 60, pp. 9-10.

The plea agreement specifically indicated that at the time of sentencing, the United States would move to dismiss the remaining counts of the Indictment (Counts One and Four). Doc. no. 40, p. 4. In exchange for the motion to dismiss Counts One and Four, the agreement further indicated that Petitioner would not "seek a downward departure or a variance from the recommended guideline sentence range." Id. at p. 5. The Agreement also indicated that the United States Attorney would move this Court to reduce the offense level by three levels for acceptance of responsibility. Id.

3

The plea agreement also indicated:

> [Petitioner] and the United States Attorney further understand and agree to the following:

> 1. The penalty that may be imposed upon [Petitioner] is:

>     (a)    A term of imprisonment of not more than 40 years;
>     (b)    A fine of $1,250,000.00;
>     (c)    A term of supervised release of 6 years;
>     (d)    A special assessment under 18 U.S.C. § 3013 of $200.00.

Id.

Finally, the plea agreement which Petitioner signed clearly indicated that Petitioner waived his rights to take a direct appeal (subject to three exceptions):

> 11.    [Petitioner] waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. §1291 or 18 U.S.C. §3742, subject to the following exceptions:

> > (a) If the United States appeals from the sentence, [Petitioner] may take a direct appeal from the sentence.

> > (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, [Petitioner] may take a direct appeal from the sentence.

See doc no. 40, p. 4. He further agreed to waive his rights to file this instant Petition attacking his sentence:

> [Petitioner] further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

Id.

During the change-of-plea hearing held on September 1, 2010 this Court reiterated that the maximum sentence it could impose under the law for the commission of the offenses to which Petitioner pled guilty was a term of imprisonment of not more than forty years, a fine of

4

$1,250,000.00, a term of supervised release of six years, and a special assessment of $200.00. See doc. no. 60, pp. 9-10.  Petitioner was asked by this Court if he understood the potential maximum sentence that the Court was authorized to impose, and Petitioner indicated that he did understand.  Id. at p. 10.  Finally, when the Government was asked to provide the Court with the guideline range applicable to Petitioner given his criminal history and the offenses to which he was pleading guilty, the Government indicated that Petitioner would be classified as a career offender due to his prior controlled substance conviction noted in the Government's Section 851 submission, as well as other prior convictions (one of which was for robbery).  Id. at p. 12.  As a result, the Government indicated that the guideline range would be 188 to 235 months of imprisonment.  Id.  When the Court asked Petitioner's attorney what he believed the applicable guideline range to be, the attorney indicated he agreed that the Government's assessment was correct and he would form "a definite opinion" after obtaining a copy of the presentence report. Id.

Also during the September 1, 2010 plea hearing, after placing Petitioner under oath, the Court asked Petitioner if he understood that he was "giving up" his right to appeal and file the instant motion.   Again, Petitioner indicated that he did understand the waivers he was making.

BY THE COURT:
                \*     \*     \*
Q     Sir, do you understand that you and the Government have the right to appeal any sentence I impose unless you voluntarily give up that right?

A     Yes, sir.
                \*     \*     \*
Q     Do you understand that in the plea agreement that you're giving up your right to appeal both the validity of your plea and your length of your sentence with only three limited exceptions?
[The Court reads the exceptions from the plea agreement.]
Do you understand?

5

A       Yes, sir.

Q       Do you understand that you're also giving up any right
that you may have to file a motion to vacate sentence under
Title 28 US Code Section 2255 for habeas corpus relief and the
right to pursue any other collateral proceedings attacking your conviction or
sentence?

A       Yes, sir.

Q       And, finally, in summary, do you understand that you
are giving up your right to appeal except as I have stated, as
well as your right to file the habeas corpus relief and attack
your sentence in any other collateral proceeding?

A       Yes, sir.

Id. at pp. 12, 25-26.

Following the guilty plea hearing held on September 1, 2010, the United States Probation

Office prepared and issued draft presentence report for counsel's eyes' only, on January 28,

2011. Doc. no. 44. On February 23, 2011, the Probation Office issued and filed a Final

Presentence Investigation Report and a Sentencing Recommendation for this Court. Doc. nos.

46 and 47. In the Final Presentence Investigation Report the Probation Officer calculated the

Offense Level as follows:

26.     The controlling guideline for Count [Two] . . . calls for an offense level
of 20. The Government evidence, through laboratory analysis, determined that
the type and quantity of controlled substance attributable to [Petitioner] in this
case, for the purposes of the sentencing guidelines was 226 grams of powder
cocaine. Upon consideration of all applicable specific offense characteristics . . .
which prescribes a 2-level increase if a dangerous weapon is possessed . . . the
adjusted level is 22.

27.     The controlling guideline for Count [Three] . . . prescribes a base offense
level of 24 if [Petitioner] committed any part of the instant offense subsequent to
sustaining two felony convictions of either a crime of violence or a controlled
substance offense. . . . Upon consideration of all applicable specific offense
characteristics . . . which prescribes a 4-level increase in the offense level if
[Petitioner] possessed or used the firearm in connection with another felony

offense . . . the adjusted offense level is 28.

> 28.    Comparison of the adjusted offense levels concludes that that the controlling guideline in this case is [the guideline for Count Three] because it produces the highest offense level.

Doc. no. 46, pp. 6-7.

Accordingly, the Probation Officer indicated in the Final Presentence Investigation Report that Petitioner's base offense level was 24, but then he added four levels to arrive at an adjusted level of 28.  However, the Report also indicates that the Probation Officer then subtracted three levels for acceptance of responsibility and timely notification of his intent to plead guilty, therefore arriving at the adjusted offense level of 25.

Next, the Probation Officer, in the Final Presentence Investigation Report, noted Petitioner was subject to a career offender enhancement due to: (1) Petitioner's criminal history (which included, *inter alia*, two prior offenses, one for delivery of a controlled substance and one for robbery); and (2) the instant crimes to which Petitioner pled guilty involved a serious drug offense and Petitioner was over the age of 18 at the time he committed them.  Thus, his offense level was increased from 25 to 34.  Per the Final Presentence Investigation Report, this offense level of 34 was reduced to 31 after deducting three levels for "acceptance of responsibility."  See doc. no. 46, p. 8.   The Final Presentence Investigation Report also indicated that Petitioner's criminal history category was a IV, but due to his career offender status that category "is enhanced to a VI[.]"  Doc. no. 46, p. 12.

Finally, the Final Presentence Investigation Report clearly laid out the following sentencing options related to imprisonment:

> 85.    Statutory Provisions: At Count [Two], the maximum term of imprisonment is 30 years . . . . At Count [Three], the maximum term of imprisonment is 30 years . . . .

86.     Guideline Provisions: . . . [B]ased on a total offense level of 31 and a
criminal history category of VI, the guideline range is 188 to 235 months. . . .

Doc. no. 46, p. 18.

On February 28, 2011, Petitioner filed a Position with Respect to Sentencing Factors

noting that counsel for Petitioner met with the Assistant United States Attorney and Petitioner's

Probation Officer and all parties agreed that certain additions to the Final Presentence

Investigation Report would be made via Addendum. Doc. no. 48. The parties further agreed that

none of the additions would affect the guideline calculations contained in the Final Presentence

Investigation Report.[1] Other than these additions, Petitioner indicated that he had no other

objections, additions, or modifications to the Final Presentence Investigation Report.[2]

On March 17, 2011, Petitioner filed his Sentencing Memorandum. In it, Petitioner stated,

"[Petitioner] agrees that the Offense Level Computations contained in Paragraphs 23 through 40

of the PSR contain all of the proper enhancements and decreases and result in a Total Offense

Level of 31." See doc. no. 49 p. 2, ¶8. Petitioner further concurred that his criminal history

category was correctly stated as VI, due to his career offender status and further agreed that the

appropriate guideline range was 188 to 235 months. Doc. no. 49, p. 3. The remainder of his

Sentencing Memorandum sets forth legal and factual arguments requesting that this Court

sentence him to the lowest end of the guideline range. A variance and/or downward departure

were not requested.

On April 1, 2011, after holding a hearing, Petitioner was sentenced by this Court to the

lowest end of the guideline range for imprisonment – 188 months. See doc. nos. 52, 53 and 61.

---

[1] The additions referenced above noted that: (1) Petitioner had two additional tattoos on his body, (2) the Cobra
pistol was found in this case was located seven feet from the drugs, on the top shelf of a closet in Petitioner's
residence, and (3) during the robbery for which Petitioner was previously convicted , Petitioner was not the gunman.

[2] The Addendum was filed on March 18, 2011 and contained the additions noted above.

During the hearing, this Court specifically asked counsel for the Petitioner if he had reviewed the Final Presentence Investigation Report with the Petitioner. See doc. no. 61, p. 6. In addition, this Court also asked Petitioner if he had read and reviewed the Final Presentence Investigation Report with his attorney. Id. Both counsel and Petitioner affirmatively answered these questions. Id. In addition, when asked if he was satisfied with the representation provided to him by his attorney, Petitioner responded affirmatively. Id. at pp. 9-10. Finally, the Court reiterated that Petitioner had waived many of his appellate rights and discussed his remaining appeal rights and reviewed the appeal process with Petitioner. Id. at pp. 20-21.

Specifically, during the sentencing hearing, after placing Petitioner under oath, the following exchanges occurred among the Court, Petitioner, and Petitioner's counsel:

BY THE COURT:

THE COURT: I've reviewed the presentence report, as I've mentioned earlier, and the addendum thereto, as well as the defendant's position with respect to the presentence investigation report, and I've also reviewed the recommendation of the probation office.

    Pursuant to a standing order of the Board of Judges of this district, the Court finds it is not appropriate to disclose the recommendation of the probation office to the parties, nor to counsel, however, sir, in determining your sentence, the Court will not consider any matter that's not previously been disclosed to you or your counsel.

    Counsel, have you reviewed the presentence report and addendum with your client?

MR. FERITO: We have, Your Honor.

THE COURT: Are there any errors in the report that you've not already called to the Court's attention?

MR. FERITO: I do not believe there are, Your Honor.

THE COURT: Sir, have you reviewed the presentence report and other matters and discussed them with your attorney?

9

THE DEFENDANT: Yes, sir.

\*       \*       \*

BY THE COURT

THE COURT: Are you satisfied with the service and representation provided by your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Anything that he's done that you think he should not have done?

THE DEFENDANT: No, sir.

THE COURT: Anything you've asked him to do that he hasn't done?

THE DEFENDANT: No, sir.

\*       \*       \*

THE COURT: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant be committed to the custody of the Bureau of Prisons to be imprisoned for a term of 188 months at Count Two, and 120 months at Count Three, to be served concurrently.

\*       \*       \*

THE COURT: Sir, I'm going to speak to you now of your right to appeal.

Further, except as otherwise waived in the plea agreement, you have the right to appeal from the orders of court, the judgment of guilty or from the sentence imposed. You have a right to have an attorney represent you on appeal at no cost to you. If you can't afford them, certified copies of the necessary records and transcripts will be furnished at the expense of the United States government.

If you appeal, the notice of appeal must be filed within 14 days from today, otherwise, you will lose your right to appeal. If you request, the Clerk of Court will immediately prepare and file a notice of appeal on your behalf.

If you want the Clerk of Court to prepare and file a notice of appeal on your behalf, you need to tell me, or you can have your attorney file it on your behalf if you decide to appeal.

Take a moment, talk to your counsel, and tell me
whether you want the Clerk of Court to file a notice of appeal on
your behalf, or will you use your current counsel to do that for
you, if you decide to appeal.

MR. FERITO: Your Honor, I've conferred with
Mr. Triplett. He advised me he doesn't wish to file an appeal
either through me or through the Clerk of Courts.

THE COURT: Thank you.
Sir, do you understand that if you decide to appeal
that you will have to do that within 14 days from today?

THE DEFENDANT: Yes, sir.

Id. at pp. 20-21.

## II.    Standard of Review

### A.    Section 2255

Section 2255 of Title 28 of the United States Code provides that:

(a) A prisoner in custody under sentence of a court established by Act of
Congress  claiming the right to be released upon the ground that the sentence was
imposed in violation of the Constitution or laws of the United States, or that the
court was without jurisdiction to impose such sentence, or that the sentence was in
excess of the maximum authorized by law, or is otherwise subject to collateral
attack, may move the court which imposed the sentence to vacate, set aside or
correct the sentence.

28 U.S.C. § 2255(a).

Further, section 2255 provides that the Court shall grant a prompt hearing unless

Petitioner's Motion to Vacate, the files and the records in this case "conclusively show that the

prisoner is entitled to no relief[.]"   28 U.S.C.  § 2255(b).

When a defendant brings a motion to vacate sentence pursuant to section 2255, the

district court is required to hold an evidentiary hearing on a motion to vacate sentence unless the

motion and files and records of the case show conclusively that the movant is not entitled to

relief.  United States v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008) (emphasis added), citing United

States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). In exercising that discretion, " 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.' " Lilly, 536 F.3d at 195, quoting Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.1989). "The court should view the factual allegations in the light most favorable to the petitioner." United States v. Smith, 101 F.Supp.2d 332, 341 (W .D. Pa 2000), citing Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d Cir.1994).

Finally, a *pro se* pleading is held to less stringent standards than pleadings drafted by attorneys. Estelle v. Gamble, 429 U.S. 97 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, a *pro se* habeas petition should be construed liberally. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir.1998).

### B.      Ineffective Assistance of Counsel

The standard of review for ineffective assistance of counsel is a familiar one. It occurs when an attorney's performance falls below "an objective standard of reasonableness," and there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Luparella v. U.S., 335 Fed.Appx. 212, 214 (3d Cir. 2009) citing Strickland v. Washington, 466 U.S. 668, 688 (1984).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate "(1) that his counsel's performance was deficient; and (2) that he was prejudiced by it." Brennan v. U.S., 322 Fed.Appx. 246, 246-247 (3d Cir. 2009) citing, Lilly, 536 F.3d at 195 and Strickland, 466 U.S. at 687.

In order to meet the first part of the two-part Strickland test, an attorney's performance may be deemed deficient when " 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " U.S. v.

12

Hankerson, 496 F.3d 303, 301 (3d Cir. 2007), citing Strickland at 687. "In assessing counsel's performance, the reviewing court must be 'highly deferential,' and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' " Ibid.

The United States Court of Appeals for the Third Circuit in Hankerson further explained that in order to meet the second part of the two-part Strickland test:

> . . . If a defendant succeeds in satisfying the first component, he must then also show prejudice, that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In the sentencing context, prejudice exists where the deficient performance affected a defendant's sentence. See, e.g., Glover v. United States, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (holding that any increase in sentence resulting from deficient performance can constitute prejudice).

Hankerson, 496 F.3d at 310-11.

This Court has considered Petitioner's Motion according to these standards.


III.    **Petitioner's Section 2255 Petition**[3]

As noted above, Petitioner filed a *pro se* motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 setting forth six grounds for *vacatur* or correction. The Petitioner primarily alleges ineffective assistance of counsel (grounds 1, 2, and 5) claiming that as a result, this Court imposed an unreasonable sentence (ground 4), but he also alleges that this Court erred in its decision to deny Petitioner's Motion to Suppress Evidence (ground 3) resulting in an unreasonable sentence (ground 4), and claims his agreement to waive appeal from his sentence is

---

[3] Based on the facts of this case as discussed more thoroughly herein, this Court finds it is not required to hold an evidentiary hearing because the motion, files and records of the case conclusively show that the movant is not entitled to relief.

invalid (ground 6).

Because it impacts Petitioner's ability to advance all of the other issues raised in his

Petition, this Court will first address: (1) whether Petitioner waived his right to appeal and to file

the instant 2255 Petition, and (2) his contention that his prior waiver is invalid.

### A.     Petitioner's Waiver Arguments

Petitioner and his counsel both signed a plea agreement that contained the following

language:

> 11.     [Petitioner] waives the right to take a direct appeal from his conviction or
> sentence under 28 U.S.C. §1291 or 18 U.S.C. §3742, subject to the
> following exceptions:
>
> > (a) If the United States appeals from the sentence,
> > [Petitioner] may take a direct appeal from the sentence.
> >
> > (b) If (1) the sentence exceeds the applicable statutory
> > limits set forth in the United States Code, or (2) the
> > sentence unreasonably exceeds the guideline range
> > determined by the Court under the Sentencing Guidelines,
> > [Petitioner] may take a direct appeal from the sentence.

See doc no. 40, p. 4.  He further agreed to waive his rights to file this instant Petition attacking

his sentence:

> [Petitioner] further waives the right to file a motion to vacate sentence,
> under 28 U.S.C. §2255, attacking his conviction or sentence, and the right
> to file any other collateral proceeding attacking his conviction or sentence.

Id.

Generally, waivers of the right to appeal and to collateral attack are valid if entered into

knowingly and voluntarily, and will divest the district court of jurisdiction over a collateral

attack.  United States v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001).  In determining "whether a

waiver is valid, a court should consider: (1) whether the waiver . . . was knowing and voluntary;

(2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of

14

the waiver; *i.e.*, what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) whether enforcing the waiver would work a miscarriage of justice. United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) citing United States v. Jackson, 523 F.3d 234 (3d Cir. 2008) (internal quotations omitted). In order to determine whether enforcing a waiver will result in a miscarriage of justice, a court may consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Khattak, 273 F.3d at 563. Ineffective assistance of counsel which prevents a defendant from understanding his plea may result in a miscarriage of justice. See United States v. White, 390 Fed. Appx. 114, 116 (3d Cir. 2010).

Here, the Court finds that Petitioner fails to make the requisite showing necessary to invalidate his waivers of appeal and collateral attack.

First, Petitioner failed to raise any substantive claim that relates specifically to the ineffectiveness of his counsel with respect to the negotiation of the waivers at issue. Rather, Petitioner main contention is that "he could never knowingly waive an appeal for a sentence that has not yet been imposed." See doc. no. 59, p. 11.

During the plea hearing, the Government read aloud the portion of the plea agreement that contained the waivers Petitioner was making with respect to appeal as well as to the filing of the instant 2255 Motion. Doc. no. 60, pp. 21-24. When the Government was finished reciting these (and other) portions of the plea agreement aloud, this Court then asked Petitioner's attorney if the Government gave an accurate summary and counsel responded in the affirmative. Id. at pp. 24-25. Similarly, when this Court asked Petitioner if what the Government had recited from

15

the plea (including the portions related to waiver) were "consistent with [his] understanding of the plea agreement[,]" the Petitioner responded, "Yes, sir." Id. at p. 25. Next, this Court reiterated, for a second time, those portions of the plea agreement that the Government had just summarized and asked Petitioner if he understood what he was "giving up." The following colloquy ensued:

> BY THE COURT:
>           *     *     *
> Q     Sir, do you understand that you and the Government have the right to appeal any sentence I impose unless you voluntarily give up that right?
>
> A     Yes, sir.
>           *     *     *
> Q     Do you understand that in the plea agreement that you're giving up your right to appeal both the validity of your plea and your length of your sentence with only three limited exceptions?
> [The Court reads the exceptions from the plea agreement.]
> Do you understand?
>
> A     Yes, sir.
>
> Q     Do you understand that you're also giving up any right that you may have to file a motion to vacate sentence under Title 28 US Code Section 2255 for habeas corpus relief and the right to pursue any other collateral proceedings attacking your conviction or sentence?
>
> A     Yes, sir.
>
> Q     And, finally, in summary, do you understand that you are giving up your right to appeal except as I have stated, as well as your right to file the habeas corpus relief and attack your sentence in any other collateral proceeding?
>
> A     Yes, sir.

Id. at pp. 12, 25-26.

During the plea hearing, this Court also explained in detail to Petitioner exactly what the

Government would have to prove beyond a reasonable doubt as to each of the two Counts if Petitioner did not enter a guilty plea, and instead, chose to go to trial. Id. at pp. 16-17. This Court queried whether Petitioner understood the burden on the Government to prove each Count to which he was pleading, and he responded affirmatively. Id. Importantly, after some discussion with the Government about its Section 851 submission, this Court told Petitioner that the maximum term of imprisonment that the Court could impose given Petitioner's guilty plea to two of the counts in the four-count indictment was not more than forty years. Id. at pp. 11-12. Petitioner indicated that he understood the potential maximum sentence as explained to him by the Court. Id. at pp. 9-10.

At no time during the plea hearing did Petitioner indicate that he misunderstood, was confused by, or was misadvised about any portion of the plea agreement he and his attorney signed. See doc. no. 60, generally. Moreover, during the change of plea hearing it became apparent to this Court that Petitioner was both willing and able to correct the record, such as when his counsel corrected several facts relating to the location of the firearms in question during Petitioner's arrest, and yet he did not raise any concerns about his plea or waiver. Id. at p. 19.

Similarly, Petitioner, who spoke on his own behalf during the sentencing hearing, reiterated that the guns he kept in his home were not loaded weapons. Doc. no. 61, at p. 9.

> THE COURT: Sir, I'm going to speak to you now of your
> right to appeal.
>      Further, except as otherwise waived in the plea
> agreement, you have the right to appeal from the orders of court,
> the judgment of guilty or from the sentence imposed. You have a
> right to have an attorney represent you on appeal at no cost to
> you. If you can't afford them, certified copies of the necessary
> records and transcripts will be furnished at the expense of the
> United States government.

If you appeal, the notice of appeal must be filed within 14 days from today, otherwise, you will lose your right to appeal. If you request, the Clerk of Court will immediately prepare and file a notice of appeal on your behalf.

If you want the Clerk of Court to prepare and file a notice of appeal on your behalf, you need to tell me, or you can have your attorney file it on your behalf if you decide to appeal.

Take a moment, talk to your counsel, and tell me whether you want the Clerk of Court to file a notice of appeal on your behalf, or will you use your current counsel to do that for you, if you decide to appeal.

MR. FERITO: Your Honor, I've conferred with Mr. Triplett. He advised me he doesn't wish to file an appeal either through me or through the Clerk of Courts.

Id. at p. 20.

Accordingly, this Court finds that both the plea colloquy and the sentencing colloquy were thorough, and Petitioner never indicated or revealed any evidence of duress.

To the extent that Petitioner is attempting to argue that ineffectiveness of counsel rendered his waiver involuntary and unknowing, this Court rejects that argument. Petitioner generally contends that counsel "ill-advised him that he had to relinquish is appeal rights in exchange for his plea of guilty" (see doc. no. 59, p.11). However, given Petitioner's sworn, in-court answers during these colloquies, and considering the terms of his written, signed plea agreement, this Court finds Petitioner's broad and cursory assertion insufficient to entitle him to relief.

Moreover, this Court and others within the ambit of the Third Circuit have consistently held that advising a charged party in Petitioner's position to accept a plea agreement is not constitutionally deficient guidance. See, e.g., United States v. Babalola, 248 Fed.Appx. 409 (3d Cir. 2007); Brown v. United States, 75 F.Supp.2d 345 (D.N.J. 1999); and U.S. v. Watkins, no. 2011 WL 2261059 (W.D. Pa. June 8, 2011).

18

Furthermore, given Petitioner's knowing and willful waiver of his appellate rights, his counsel was not ineffective for failing to file an appeal. See United States v. Mabry, 536 F.3d 231, 241 (3d Cir. 2008). Thus, under applicable standards, Petitioner has failed to proffer any basis from which this Court could conclude that his counsel's performance fell below the wide range of reasonably competent assistance. He has not, therefore, demonstrated that the waiver should be avoided on those grounds.

In conclusion, based on a review of the record, the evidence, Petitioner's submissions, his prior testimony and his current allegations, this Court finds that Petitioner has not made the requisite showing necessary to invalidate the waivers he knowingly and willingly made previously.

**B.      Grounds 1, 2, 4, and 5 – Ineffective Assistance of Counsel**

As noted above, Petitioner has waived all rights to appeal his sentence and to file the instant collateral attack on his sentence. As such his Petition which alleges ineffective assistance of counsel (grounds 1, 2, and 5) and claims that as a result, this Court imposed an unreasonable sentence (ground 4) is summarily denied for the reasons set forth in subpart "A." immediately above.

However, this Court also notes that under Mabry, supra, the Court of Appeals for the Third Circuit specifically addressed a defendant's allegations that his counsel refused to appeal his sentence despite his express request that counsel do so, had no bearing in light of the defendant's valid waiver of his appellate rights. Mabry, 536 F.3d at 242 ("We will consider the validity of the collateral waiver as a threshold issue and employ an analysis consistent with other waiver cases.") Accordingly, to the extent that Petitioner is attempting to argue that under Roe v. Flores-Ortega, 528 U.S. 470 (2000), a presumption of prejudice applies where counsel fails to

19

file a requested appeal even where a defendant has waived his appeal rights, the Court of Appeals for this Circuit in <u>Mabry</u> has concluded the opposite. This Court will accordingly follow the binding authority of the <u>Mabry</u> decision, and deny Petitioner the relief requested.

**C.    Grounds 3 and 4 – Court's Order partially Denying Petitioner's Motion to Suppress**

Petitioner's § 2255 Motion also alleges that this Court erred in its decision to deny, in part, Petitioner's Motion to Suppress Evidence (ground 3), and claiming that as a result, this Court imposed an unreasonable sentence (ground 4). As noted above, Petitioner has waived all rights to appeal his sentence and to file the instant collateral attack on his sentence.

**IV. Certificate Of Appealability**

Under 28 U.S.C. § 2253(c)(2), a "certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." For the reasons stated above, Petitioner has failed to make such a showing. Therefore, a certificate of appealability will not issue.

**V.  Conclusion**

In sum, Petitioner has waived his right to collateral attack, and his Motion must be denied. No certificate of appealability shall issue. An appropriate Order follows.

**ORDER**

AND NOW, this 24th day of August, 2011, it is hereby ORDERED, ADJUDGED, and

DECREED that Defendant's Motion For Habeas Corpus Relief Under 28 U.S.C. § 2255 (Doc.

No. 58) is hereby DENIED. No certificate of appealability shall issue.

s/   Arthur J. Schwab

United States District Judge

cc:     All Registered ECF Counsel and Parties

Terrence Curtis Triplett
#30854-068
FCI Gilmer
201 FCI Lane
Glenville, WV 26351